HILDA BUDDLE, PLAINTIFF-RESPONDENT, v. RELIABLE COUNCIL NO. 169, JUNIOR ORDER UNITED AMERICAN MECHANICS, AN ASSOCIATION, DEFENDANT-APPELLANT.

Submitted October 30, 1942—Decided January 22, 1943.

For the plaintiff-respondent, *Andrew O. Wittreich* and *Adolph Abramowitz*.

For the defendant-appellant, *Powell & Parker* (*Harold T. Parker*).

The opinion of the court was delivered by

CASE, J. The appeal is from a judgment in the Supreme Court which affirmed a judgment of the First Judicial District Court of Hudson County. The judgment was in the amount of $500 and costs in favor of the plaintiff on a death benefit claim growing out of the death of her husband against the defendant fraternal order. It is the contention of the appellant that there are no facts in proof upon which the judgment may be sustained. The Supreme Court held that the decedent's pass book, technically called the "Member's Due Book," although at variance with the defendant's ledger, furnished the evidence upon which the judgment could be sustained and that the District Court Judge could accept that evidence and reject the defendant's ledger as a support for a judgment. The case turns upon whether the proof in the pass book will sustain that finding and it is to that question that we now address ourselves.

The constitution of the defendant order provided in Chapter VI:

"Sec. 4. Any member of this council who shall owe the council thirteen or more weeks' dues, he is debarred from all rights and privileges of the council and Order, except that of being admitted to a seat in his council during its sessions. He is automatically suspended from all sick and funeral benefits without notice.

"Sec. 5. If a member shall become indebted to his council for thirteen or more weeks' dues, he shall stand suspended from sick and funeral benefits for the space of four weeks after he has paid the entire amount of his indebtedness in full to date. If he should leave a balance unpaid he shall not be entitled to sick benefits or funeral benefits until all his indebtedness has been paid in full to date."

Under those provisions, if a member becomes thirteen weeks in arrears for dues his right to benefits is automatically suspended without notice to him and without affirmative action of the council.

The entries in the pass book were made by the representative of the defendant. The pages were printed in columnar form with indicated spaces for the several weeks of each month, one below the other, and corresponding side spaces, so that, when properly filled, the book would show the weeks for which dues had been paid, the bulk amount of each payment, and the date of payment. To illustrate from the showing of the book: The dates January 8th, 15th, 22d, 29th, February 5th, 12th, 19th, 26th, appear in linear form, a separate line to each weekly date. Opposite "Feb. 26" is noted "$3.20; 5/6; M. H. Taylor," and underneath that entry a line is drawn. The unmistakable meaning is that on May 6th, 1940, the decedent paid the sum of $3.20, being for dues at the rate of 40 cents per week for the eight weeks from January 2d to February 26th, inclusive; and that M. H. Taylor, the financial secretary of the Council, certified by his signature to that entry.

On May 6th, 1940, when that payment was made, the decedent was, with equal clarity, until making the payment, in arrears for the payments due on January 8th, 15th, 22d, 29th, February 5th, 12th, 19th, 26th, March 4th, 11th, 18th, 25th, April 1st, 8th, 15th, 22d, 29th—seventeen weeks, without

counting the date on which the payment was made, May 6th; and that date, of course, added another week. The payment, as we have said, was for eight weeks to February 26th, inclusive; but with that payment made the decedent was still, on the day of payment, ten weeks in arrears. In like fashion the book shows that on June 3d decedent paid $1.20 for the three weeks to March 18th, inclusive, still remaining, however, eleven weeks in arrears; and that on July 1st he paid $3.20 for eight weeks to May 13th, inclusive, remaining seven weeks in arrears. The book further shows that on "7/17, as of 8/5" he paid $4 for ten weeks to July 22d. The deceased died on July 22d. We shall not go into the probative effect of the phrase in the pass book "as of 8/5" as triers of the fact might differ as to it; but the factual construction most favorable to the decedent is that on July 17th he was, for the first time since January 1st, fully paid up; that that was less than a week before he died and that he had, over a portion of the period following January 1st, been in arrears for more than thirteen weeks' dues. The significance of that factual showing arises from chapter VI, sections 4 and 5 of the constitution of the defendant order, *supra*. The defendant's books show that the decedent never completely paid up his indebtedness; but upon the showing of the decedent's pass book, on which respondent relies, it is the inescapable fact that the decedent, having been thirteen weeks and more in arrears, never reached the stage where, over a period of four weeks, his indebtedness to the Council had been paid in full to date. Under the foregoing provisions of the defendant's constitution the decedent, from and after April 1st, 1940, was automatically and without notice suspended from funeral benefits, and, inasmuch as at the time of his death the four weeks' recovery period had not elapsed, he died in that state of suspension.

Respondent builds her several arguments concerning the facts and their implications upon the repeated assertion that decedent was never, at any time, according to the pass book, in arrears for more than eight weeks, a position which, according to our study, is without support in the proofs. She cites *Kissinger* v. *North American Union Life Assurance Society*, 108 *N. J. L.* 405; *Landgraf* v. *North Jersey Street Railway*,

&c., *Association,* 13 *N. J. Mis. R.* 470, and *Leo Grande* v. *Carpenters' Local No.* 391, &c., 121 *N. J. L.* 430. It is stated in the Kissinger opinion that:

"Four things are essential under the contract to entitle the beneficiary to recover: Payment of the assessments and dues on the benefit certificate; compliance by the insured with the laws, rules and regulations of the insurer; death of the insured while in good standing; satisfactory proof of the fact and cause of death."

Our observations, *supra,* give our view that under the laws, rules and regulations of the defendant, and the uncontradicted facts, the decedent, because of his own omissions, was not, at the time of his death, in good standing with respect to his right to death benefits. Distinctions are to be made of the Landgraf case because of the fact that the section of the by-laws there in question did not apply to the payment of death benefits and of the Leo Grande case because it embodied a factual finding of waiver upon proofs that have no relation to the instant case.

There was no obligation upon the defendant to serve notice upon the decedent that he was suspended from funeral benefits; specifically, the suspension was automatic, without notice, by the provisions of section 4, *supra.* The laws of the defendant order were such that a member, although suspended from sick and funeral benefits, might remain a member and be admitted to a seat in his council during its sessions; and chapter IX of the constitution, which provides for the giving of notice, sets out the procedure by which a member may, for non-payment of dues, be fully suspended from the Council. There is no conflict between chapter IX and sections 4 and 5 of chapter VI, *supra.*

It is a general principle that persons entering mutual associations are presumed to know the terms of the charter and by-laws under which they are organized; that the officers of such associations cannot dispense with the terms and conditions of such charter and by-laws unless they are expressly authorized to do so; and that the officers in a mutual association have no power to waive by-laws relating to the substance of the contract between an individual member and

his associates in their corporate capacity. *Kocher* v. *Supreme Council Catholic Benevolent Legion,* 65 *N. J. L.* 649, 654.

Decedent had a right to preserve his membership; that was a thing not altogether identical with his right to benefits. Defendant is not chargeable with waiver or estoppel against asserting its contractual rights merely because it accepted payments, the making of which were consistent with a continued suspension from benefits.

It is our conclusion that there are no facts in proof to sustain the judgment.

A further requirement of the constitution of the defendant order was that (chapter XX, section 16):

"No council, member of a council, beneficiary of a member of a council or legal representatives of a member of any council shall be permitted to apply to the courts of this State for any redress until they have first made the proper appeals and exhausted all the resources of the Order."

The appeal procedure enjoined upon the beneficiary of a member against whom an adverse decision had been made by the local council (lodge) was to forward the appropriate paper to the State Council secretary whereupon an examiner would be appointed to take testimony. The testimony would be laid before the appeal committee of the State Council which would hold a session at which the appellant might appear in person or by counsel. If the decision of the committee should be adverse to the appellant, a further appeal would lie to the State Council itself. When the by-laws of an order require that the appeals within the society must be exhausted before redress may be sought in the civil courts, that procedure, unless there is sound countervailing reason, must be followed, *Smith* v. *Ocean Castle,* 59 *N. J. L.* 198; *Mogelever* v. *Newark Newspaper Guild,* 124 *N. J. Eq.* 60, and the principle applies, not only to a member of the organization, but also to a beneficiary whose rights arise solely out of the contract between the member and the order, *Purcaro* v. *Grand Lodge, &c., Sons of Italy,* 107 *N. J. L.* 82.

It has been held that the rule does not apply where the pursuit of such remedies would be futile, delusory or vain. *Local No.* 373, *&c.,* v. *International, &c., Ironworkers,* 120

*N. J. Eq.* 220, 230; *Taffey* v. *New Jersey State Firemen's Association,* 118 *N. J. L.* 352; *Walsche* v. *Sherlock,* 110 *N. J. Eq.* 223. That exception is sought to be applied here, and the fact upon which respondent bases her argument of futility is that the board of governors of the State Council Funeral Fund had, in a letter to the local council, rejected the claim; but it does not follow that an appeal would for that reason have been in vain. The obligation to pay death benefits is upon the local council. By the constitution of the order there is provision for a reimbursement from the "funeral fund" of the General Council to the several subordinate councils for such death (funeral) benefits as shall have been paid by them in accordance with the constitution, rules and regulations. The fund is under the direction of a board of governors, and it was that board which, in an exchange of correspondence with the recording secretary of the local council, passed adverse judgment on the claim. It is clear, however, that appeal proceedings would not have gone to or through that body. The cases generally on the subject are well reviewed in the Walsche opinion, *supra.* The underlying reason for a variance, where such is permitted, is that a litigant will not be bound to go through a useless formality or to seek for justice at the hands of a tribunal which has prejudged the matter in issue. *Correia et al.* v. *Supreme Lodge, &c. (Mass.),* 105 *N. E. Rep.* 977. It cannot be presumed from the record as here made that the respondent's case was prejudged by the tribunals to which, in orderly procedure, she should have gone or that those bodies would not have given a fair hearing and a just decision.

The judgment below will be reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Parker, Case, Donges, Porter, Colie, Dear, Wells, Rafferty; Hague, Thompson, JJ. 12.